UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| **BREEA OSTERUD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO.: 3:13-cv-115-WTL-WGH |
| | ) | |
| **SCHNUCK MARKETS, INC., et al.,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## ANSWER TO SECOND AMENDED COMPLAINT FOR DAMAGES

COMES NOW defendant **C & E Farms, Inc.,** (Hereinafter referred to as "Defendant **C & E Farms**", by and through counsel, and for its Answer to plaintiff's Second Amended Complaint, states:

### I. PARTIES

1.     The Plaintiff is a citizen of Vanderburgh County, State of Indiana, which is located within the jurisdiction of this Court.

   **ANSWER:**     **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 1 of Plaintiff's Second Amended Complaint and therefore must deny same.**

2.     The Defendant Schnuck Markets, Inc. is a Missouri corporation that, at all times relevant, owned and operated retail grocery stores d/b/a "Schnucks" in the state of Indiana, including the Schnucks location in Newburgh, Indiana.  At that location, Schnucks operated a salad bar where customers make their own salads.  The Defendant does business within the jurisdiction of this Court.

**ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 2 of Plaintiff's Second Amended Complaint and therefore must deny same.**

3.     The Defendant Vaughan Foods, Inc. ("Vaughan") is an Oklahoma corporation, that at all times relevant, owned and operated a food processing and distributing company that manufactured, among other items, fresh vegetable products for distribution in the interstate marketplace and sold the *E. coli* O157:H7-contaminated romaine lettuce that caused the outbreak more fully described in paragraphs 8 through 13 of this Complaint.

**ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 3 of Plaintiff's Second Amended Complaint and therefore must deny same.**

4.     The Defendant 4Q Farms, LLC ("4Q") is a California limited liability company with its principal place of business in the State of California.  It operates or manages the Mehl 2B Farm and Fagundes Farm in Salinas, California.

**ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 4 of Plaintiff's Second Amended Complaint and therefore must deny same.**

5.     The Defendant C.H. Robinson Worldwide, Inc. d/b/a Food Source Monterey ("FoodSource") is incorporated in the state of Delaware with its principal place of business in the state of Minnesota.  It owns, operates, or manages various farms in Salinas Valley, California, including, but not limited to, the Gubser Ranch.

> **ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 5 of Plaintiff's Second Amended Complaint and therefore must deny same.**

6.     Defendant C & E Farms, Inc. ("C & E") is a California corporation with its principal place of business at 92 Hitchcock Road, Salina, California 93912. It is in the business of fruit and vegetable brokering.

> **ANSWER:** **Defendant C & E Farms admits that it is a California corporation but denies the remaining allegations set forth in paragraph 6 of Plaintiff's Second Amended Complaint.**

7.     The Defendants John Does 1 through 2 are persons or entities whose true identities are presently unknown, but who may have manufactured, distributed, or sold the romaine lettuce that was the proximate cause of Plaintiff's injuries. Defendants John Does 1 through 4 will be properly identified upon discovery of their true identities.

> **ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 7 of Plaintiff's Second Amended Complaint and therefore must deny same.**

## II. JURISDICTION AND VENUE

8.     This matter was pending in the Vanderburgh Circuit Court in the Southern District of Indiana pursuant to Cause No. 82C01-1212-CT-00677. It was removed by Defendant, Schnuck Markets, Inc. on May 9, 2013 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Diversity of citizenship exists pursuant to 28 U.S.C. § 1332, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

**ANSWER:** Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 8 of Plaintiff's Second Amended Complaint and therefore must deny same.

### III. GENERAL ALLEGATIONS

9.     **_E. coli_ O157:H7**: _Escherichia coli_ is the name of a common family of bacteria, most members of which do not cause human disease. _E. coli_ O157:H7 is a specific member of this family that can cause bloody diarrhea (hemorrhagic colitis) in humans. After a susceptible individual ingests _E. coli_ O157:H7, the bacteria attaches to the inside surface of the large intestine and initiates an inflammatory reaction of the intestine. The mean incubation period (time from ingestion to the onset of symptoms) of _E. coli_ O157:H7 is estimated to be two to four days (range, 1-21 days). Typically, a patient with an acute _E. coli_ O157:H7 infection presents with abdominal cramps, bloody diarrhea, and vomiting. _E. coli_ O157:H7 can produce a wide spectrum of disease from mild, non-bloody diarrhea, to severe bloody diarrhea accompanied by excruciating abdominal pain to life-threatening complications.

**ANSWER:** Defendant C & E Farms admits that Escherichia Coli is a common bacteria which has been known to cause illness in humans, further states that it does not have sufficient information to admit or deny the remaining allegations set forth in paragraph 9 of Plaintiff's Second Amended Complaint and therefore must deny same.

10.     **Prior _E. coli_ Outbreaks Tied to Lettuce and Leafy Greens**: _E. coli_ outbreaks associated with lettuce or spinach, specifically the "pre-washed" and "ready-to-eat" varieties, are

by no means a new phenomenon.  The chart below references a number of the higher profile outbreaks:

| Date | Vehicle | Etiology | Confirmed Cases | States/Providences |
|---|---|---|---|---|
| Aug. 1993 | Salad bar | *E. coli* O157:H7 | 53 | 1:WA |
| July 1995 | Lettuce (leafy green; red; romaine) | *E. coli* O157:H7 | 70 | 1:MT |
| Sept. 1995 | Lettuce (romaine) | *E. coli* O157:H7 | 20 | 1:ID |
| Sept. 1995 | Lettuce (iceberg) | *E. coli* O157:H7 | 30 | 1:ME |
| Oct. 1995 | Lettuce (iceberg, unconfirmed) | *E. coli* O157:H7 | 11 | 1:OH |
| May-June 1996 | Lettuce (mesclun; red leaf) | *E. coli* O157:H7 | 61 | 3:CT, IL, NY |
| May 1998 | Salad | *E. coli* O157:H7 | 2 | 1:CA |
| Feb.-Mar. 1999 | Lettuce (iceberg) | *E. coli* O157:H7 | 72 | 1:NE |
| July-Aug. 2002 | Lettuce (romaine) | *E. coli* O157:H7 | 29 | 2:WA, ID |
| Oct. 2003-May 2004 | Lettuce (mixed salad) | *E. coli* O157:H7 | 57 | 1:CA |
| Apr. 2004 | Spinach | *E. coli* O157:H7 | 16 | 1:CA |
| Sept. 2005 | Lettuce (romaine) | *E. coli* O157:H7 | 32 | 3:MN, WI, OR |
| Sept. 2006 | Spinach (baby) | *E. coli* O157:H7 and other serotypes | 204 | Many States |
| Nov-Dec. 2006 | Lettuce | *E. coli* O157:H7 | 71 | NY, NJ, PA, DE |
| Nov-Dec. 2006 | Lettuce | *E. coli* O157:H7 | 81 | IA, MN, WI |
| May 2008 | Romaine | *E. coli* O157:H7 | 9 | WA |
| April-May 2010 | Romaine | *E. coli* O145 | 33 | MI, NY, OH, PA, TN |

**ANSWER:  Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 10 of Plaintiff's Second Amended Complaint and therefore must deny same.**

11.    **The Outbreak**:  Collaborative investigative efforts of state, local, and federal public health agencies indicates that romaine lettuce sold primarily at several locations of Defendants Schnucks' grocery stores caused an *E. coli* O157:H7 outbreak that has sickened at least 60 people in 10 states.

**ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 11 of Plaintiff's Second Amended Complaint and therefore must deny same.**

12.     From October 10 to November 4, 2011, public health officials in several states and the Centers for Disease Control and Prevention conducted an epidemiologic study by comparing foods eaten by 22 ill and 82 well persons, including 45 well persons who shopped at Schnucks' grocery store locations during the week of October 17, 2011.  Analysis of this study established that eating romaine lettuce was associated with this illness.  Ill persons (85%) were significantly more likely than well persons (46%) to report eating romaine lettuce in the week before illness.  Ill persons (86%) were also significantly more likely than well persons (55%) to report shopping at Schnucks' grocery stores.

**ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 12 of Plaintiff's Second Amended Complaint and therefore must deny same.**

13.     The investigation also showed that, among ill and well persons who shopped at Schnucks' locations, ill persons (89%) were significantly more likely than well persons (9%) to report eating a salad from the salad bar.  Several different types of lettuce were offered on the salad bar.  Of 18 ill persons who reported the type of lettuce eaten, 94% reported eating romaine lettuce.  No other type of lettuce or other item offered on the salad bar was reported to be eaten by more than 55% of ill persons.

**ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 13 of Plaintiff's Second Amended Complaint and therefore must deny same.**

14.     Ill persons reported purchasing salads from salad bars at Schnucks' locations between October 5 and October 24, 2011.  A total of 9 Schnucks' locations were identified where more than one ill person reported purchasing a salad from the salad bar in the week before becoming ill.  This included 2 separate locations where 5 ill persons reported purchasing a salad at each location.  For locations where more than one ill person reported purchasing a salad from the salad bar and the date of purchase was known, dates of purchase were all within 4 days of other ill persons purchasing a salad at that same location.

> **ANSWER:     Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 14 of Plaintiff's Second Amended Complaint and therefore must deny same.**

15.     Romaine lettuce served on salad bars at all Schnucks' locations had come from Defendant Vaughan's food processing business in Oklahoma.  The contamination of romaine lettuce in this outbreak occurred at or before the lettuce left the possession and control of Vaughan, and before the product reached Schnucks' locations.

> **ANSWER:     Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 15 of Plaintiff's Second Amended Complaint and therefore must deny same.**

16.     The Food and Drug Administration and several state agencies conducted traceback investigations for romaine lettuce to try to identify the source of contamination.  Traceback investigations focused on ill persons who had eaten at salad bars at several Schnucks' locations and ill persons at university campuses in Minnesota (1 ill person) and Missouri (2 ill persons).  Traceback analysis determined that a single common lot of romaine lettuce harvested from a farm, likely owned by either 4Q or FoodSource, was used to supply Vaughan with romaine lettuce, and

from there the Schnucks' locations as well as the university campus in Minnesota during the time of the illnesses. Preliminary findings of investigation at that farm did not identify the source of the contamination. The farm was no longer in production during the time of the investigation.

> **ANSWER:** **Defendant C & E Farms is aware that the Food and Drug Administration conducted an investigation but does not have sufficient information to admit or deny the allegations set forth in paragraph 16 of Plaintiff's Second Amended Complaint and therefore must deny same.**

### Breea Osterud's Infection and Illness

17.    In October 2011, Breea Osterud was 27 years old, was a regular customer of Schnucks grocery in Newburgh, Indiana. In the week prior to the onset of symptoms related to her infection, Ms. Osterud ate from the salad bar at the Newburgh, Indiana Schnucks location on two occasions. Each time, she selected the romaine lettuce, in addition to a variety of other ingredients from the salad bar, and ate them.

> **ANSWER:** **Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 17 of Plaintiff's Second Amended Complaint and therefore must deny same.**

18.    Onset of Ms. Osterud's illness occurred on or about October 21, 2011. Symptoms began with uncomfortable abdominal cramps and diarrhea over a three-day period. Severe cramping and diarrhea continued to the point she was having diarrhea only and passage of blood.

> **ANSWER: Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 18 of Plaintiff's Second Amended Complaint and therefore must deny same.**

19. On October 22, 2011, another customer of the same Schnucks grocery in Newburgh, Indiana, Rachael Crowdus, consumed salad from that same salad bar, became infected, and was diagnosed with *E. coli O157:H7*.

> **ANSWER: Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 19 of Plaintiff's Second Amended Complaint and therefore must deny same.**

20. On October 20, 2011, Ms. Osterud presented to the St. Mary's Medical Center with the symptoms referenced in paragraph 18.

> **ANSWER: Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 20 of Plaintiff's Second Amended Complaint and therefore must deny same.**

21. On October 22, 2011, Ms. Osterud presented to Deaconess Health System for evaluation of abdominal cramps and blood in her stool.

> **ANSWER: Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 21 of Plaintiff's Second Amended Complaint and therefore must deny same.**

22. CT of the abdomen showed severe colitis with pronounced wall thickening.

> **ANSWER: Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 22 of Plaintiff's Second Amended Complaint and therefore must deny same.**

23.     On October 26, 2011, Ms. Osterud was discharged with severe thrombacytopenia, acute renal failure and anemia and her platet count had dropped by almost 90%.

**ANSWER:     Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 23 of Plaintiff's Second Amended Complaint and therefore must deny same.**

24.     There was a strong clinical suspicion of HUS (Hemolytic-Uremia Syndrome), which is a disorder that usually occurs when an infection in the digestive system produces toxic substances that destroy red blood cells, causing kidney injury.  HUS occurs after a substantial infection with E-Coli bacteria.

**ANSWER:     Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 24 of Plaintiff's Second Amended Complaint and therefore must deny same.**

25.     As a direct and proximate result of her infection, Ms. Osterud has suffered severe and permanent injuries of the mind and body, has incurred medical bills in excess of $175,000 for the care and treatment of her injuries, and will continue to do so in the future.

**ANSWER:     Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 25 of Plaintiff's Second Amended Complaint and therefore must deny same.**

26.     As a further direct and proximate result of her infection, Ms. Osterud's ability and capacity for work, labor, pleasure and enjoyment of life has been diminished and will continue to do so in the future.

**ANSWER:** Defendant C & E Farms does not have sufficient information to admit or deny the allegations set forth in paragraph 26 of Plaintiff's Second Amended Complaint and therefore must deny same.

## IV. CAUSES OF ACTION AGAINST DEFENDANT SCHNUCK

### Count 1 – Strict Liability

**ANSWER:** Defendant C & E Farms makes no answer to paragraphs 27-33 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendant Schnuck's only.

### Count II – Breach of Warranty

**ANSWER:** Defendant C & E Farms makes no answer to paragraphs 34-38 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendant Schnuck's only.

### Count III – Negligence and Negligence Per Se

**ANSWER:** Defendant C & E Farms makes no answer to paragraphs 39-44 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendant Schnuck's only.

### V. CAUSES OF ACTION AGAINST DEFENDANTS VAUGHAN AND JOHN DOES 1-2

#### Count IV – Strict Liability

**ANSWER:** Defendant C & E Farms makes no answer to paragraphs 45-51 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendants Vaughn and John Does 1 and 2 only.

#### Count V – Breach of Warranty

**ANSWER:** Defendant C & E Farms makes no answer to paragraphs 52-56 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendants Vaughn and John Does 1 and 2 only.

#### Count VI – Negligence and Negligence Per Se

**ANSWER:** Defendant C & E Farms makes no answer to paragraphs 57-63 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendants Vaughn and John Does 1 and 2 only.

### VI. CAUSES OF ACTION AGAINST DEFENDANT 4Q FARMS, LLC AND C & E FARMS

#### Count VII – Strict Liability

64. Plaintiff hereby incorporates by reference all preceding paragraphs 1-63 of this Complaint in *haec verba*.

**ANSWER:** **Defendant C & E Farms incorporates by reference its answer to paragraphs 1-63 of Plaintiff's Second Amended Complaint as if fully set forth herein.**

65.     At all times, 4Q and C & E manufactured and sold the E. coli contaminated food product that caused Ms. Osterud's injuries.

**ANSWER:** **Defendant C & E Farms denies the allegations contained in paragraph 65 of Plaintiff's Second Amended Complaint.**

66.     The E. coli contaminated food product that 4Q and C & E manufactured and sold was, at the time it left 4Q and C & E's control, defective because it contained E. coli, a potentially lethal pathogen, and was thus in a condition not contemplated by the ultimate consumer.

**ANSWER:** **Defendant C & E Farms denies the allegations contained in paragraph 66 of Plaintiff's Second Amended Complaint.**

67.     The defective condition of the E. coli contaminated food product that 4Q and C & E manufactured and sold caused the food product to be unreasonably dangerous because the contaminated product created a strong likelihood of injury to Ms. Osterud, who was unaware of the danger of consuming the product in a normal manner.

**ANSWER:** **Defendant C & E Farms denies the allegations contained in paragraph 67 of Plaintiff's Second Amended Complaint.**

68.     The E. coli contaminated food product that 4Q and C & E manufactured and sold was delivered to Ms. Osterud without any change in its defective condition.  Ms. Osterud consumed the adulterated food product that 4Q and C & E manufactured and sold in the manner expected and intended.

**ANSWER:** **Defendant C & E Farms denies the allegations contained in paragraph 68 of Plaintiff's Second Amended Complaint.**

69.     As a direct and proximate result of 4Q and C & E's manufacturing and sale of E. coli contaminated food, Ms. Osterud was infected with E. coli causing her to suffer substantial personal injury and related economic loss.

**ANSWER:** **Defendant C & E Farms denies the allegations contained in paragraph 69 of Plaintiff's Second Amended Complaint.**

WHEREFORE, having fully answered Count VII of Plaintiff's Second Amended Complaint, Defendant C & E Farms prays to be dismissed with its proper costs and for such other relief the court deems just and proper.


## Count VIII – Negligence and Negligence Per Se

70.     Plaintiff hereby incorporates by reference all preceding paragraphs 1-69 of this Complaint in *haec verba*.

**ANSWER:** **Defendant C & E Farms incorporates by reference its answer to paragraphs 1-69 of Plaintiff's Second Amended Complaint as if fully set forth herein.**

71.     4Q and C & E owed to Ms. Osterud a duty to use reasonable care in the promotion, marketing, manufacturing, and sale of its food products, the observance of which duty would have prevented or eliminated the risk that the 4Q and C & E's food products would become contaminated with E. coli or any other dangerous pathogen.  4Q and C & E breached this duty by failing to exercise reasonable care in the manufacturing and sale of their food product.

**ANSWER:** Defendant C & E Farms denies the allegations set forth in paragraph 71 of Plaintiff's Second Amended Complaint.

72. 4Q had a duty to comply with all statutes, laws, regulations, and safety codes pertaining to the manufacturing and sale of its food product, but it failed to do so. Ms. Osterud is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes, and provisions. 4Q and C & E breached this duty and were therefore negligent.

**ANSWER:** Defendant C & E Farms denies the allegations set forth in paragraph 72 of Plaintiff's Second Amended Complaint.

73. 4Q and C & E had a duty to comply with the following statutes: the Federal, Drug, and Cosmetics Act, 21 U.S.C. § 301 *et seq.*; the Indiana adulterated food statutes, Ind. Code § 16-42-2 *et seq.*; and the Indiana advertising statutes, Ind. Code § 16-42-1 *et seq.* 4Q's noncompliance constitutes negligence *per se* in their manufacturing and sale of a product contaminated with E. coli.

**ANSWER:** Defendant C & E Farms denies the allegations set forth in paragraph 73 of Plaintiff's Second Amended Complaint.

74. Furthermore, 4Q and C & E had a duty to properly supervise, train, and monitor its employees and to ensure its employees complied with all applicable statutes, laws, regulations, and safety codes pertaining to the distribution, preparation, storage, or sale of similar food products, but 4Q and C & E failed to do so. 4Q and C & E breached this duty and were therefore negligent.

**ANSWER:** Defendant C & E Farms denies the allegations set forth in paragraph 74 of Plaintiff's Second Amended Complaint.

75.     4Q and C & E had a duty to manufacture, distribute, and sell food products that: (1) were reasonably safe, wholesome, free of defects, and from reliable sources, (2) complied with applicable federal, state, and local laws, ordinances, and regulations, and (3) were clean, free from adulteration, and safe for human consumption.  4Q and C & E, however, failed to do so and as negligent for the breach of its duty.

> **ANSWER:     Defendant C & E Farms denies the allegations set forth in paragraph 75 of Plaintiff's Second Amended Complaint.**

76.     As a direct and proximate result of 4Q and C & E's negligence and negligence *per se*, Ms. Osterud was infected E. coli causing substantial personal injury and causing Ms. Osterud's related economic loss.

> **ANSWER:     Defendant C & E Farms denies the allegations set forth in paragraph 76 of Plaintiff's Second Amended Complaint.**

77.     All dangers associated with the food product were reasonably foreseeable or scientifically discoverable by 4Q and C & E at the time 4Q and C & E released the food into the stream of commerce.

> **ANSWER:     Defendant C & E Farms denies the allegations set forth in paragraph 77 of Plaintiff's Second Amended Complaint.**

WHEREFORE having fully answered Count VIII of Plaintiff's Second Amended Complaint against Defendant C & E Farms prays to be dismissed with its proper costs and for such other relief the court deems just and proper.

## Count IX – Breach of Warranty

78.     Plaintiff hereby incorporates by reference all preceding paragraphs 1-77 of this Complaint in *haec verba*.

> **ANSWER:     Defendant C & E Farms incorporates by reference its answers to paragraphs 1-77 of Plaintiff's Second Amended Complaint as if fully set forth herein.**

79.     4Q and C & E is liable to Ms. Osterud for breach express and implied warranties made regarding the E. coli contaminated food product that caused Ms. Osterud's injuries. These express and implied warranties included the implied warranties of merchantability and fitness for a particular use. Specifically, 4Q and C & E expressly warranted, through their sale of the food product to the public and by the statements and conduct of their employees and agents, that the food product they had manufactured, distributed, or sold was fit for human consumption and not otherwise adulterated or injurious to a consumer's health.

> **ANSWER:     Defendant C & E Farms denies the allegations set forth in paragraph 79 of Plaintiff's Second Amended Complaint.**

80.     Ms. Osterud alleges that the E. coli contaminated food product that caused Ms. Osterud's injuries would not pass without exception in the trade and that the sale of that contaminated food product was therefore in breach of the implied warranty of merchantability.

> **ANSWER:     Defendant C & E Farms denies the allegations set forth in paragraph 80 of Plaintiff's Second Amended Complaint.**

81.     Ms. Osterud alleges that the E. coli contaminated food that caused Ms. Osterud's injuries was not fit for the uses and purposes intended (i.e. human consumption) and that the sale

of that contaminated food product was therefore in breach of the implied warranty of fitness for its particular use.

> **ANSWER:** **Defendant C & E Farms denies the allegations set forth in paragraph 81 of Plaintiff's Second Amended Complaint.**

82.     As a direct and proximate result of 4Q and C & E's breach of express or implied warranties regarding the contaminated food product, Ms. Osterud was infected with E. coli causing substantial personal injuries and related economic loss.

> **ANSWER:** **Defendant C & E Farms denies the allegations set forth in paragraph 82 of Plaintiff's Second Amended Complaint.**

WHEREFORE having fully answered Count IX of Plaintiff's Second Amended Complaint against Defendant C & E Farms prays to be dismissed with its proper costs and for such other relief the court deems just and proper.

## VII.  CAUSES OF ACTION AGAINST DEFENDANT FOODSOURCE

### Count X – Strict Liability

**ANSWER:** **Defendant C & E Farms makes no answer to paragraphs 83-88 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendant C.H. Robinson Worldwide, Inc. only.**

### Count XI – Negligence and Negligence Per Se

**ANSWER:** **Defendant C & E Farms makes no answer to paragraphs 89-96 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendant C.H. Robinson Worldwide, Inc. only.**

## Count XII – Breach of Warranty

**ANSWER:** Defendant C & E Farms makes no answer to paragraphs 97-101 of Plaintiff's Second Amended Complaint in that the allegations contained therein are directed against Defendant C.H. Robinson Worldwide, Inc. only.

## AFFIRMATIVE DEFENSES

1.    Plaintiff fails to state a claim against Defendant **C & E Farms**.

2.    Plaintiff's claims alleged in the Complaint are preempted by applicable state or federal laws.

3.    Plaintiff's alleged injuries were caused by the act or omission of an individual or entity over whom or which Defendant **C & E Farms** exercised no control.

4.    The negligence of others, over whom Defendant **C & E Farms** exercises no control, was either the sole proximate cause of Plaintiff's alleged injuries or was a proximate cause of Plaintiff's alleged injuries. As a result, any fault attributable to C & E Farms must be apportioned among all other potentially responsible parties, including plaintiff.

5.    The negligence of Plaintiff and her failure to use that degree of care as would have been used by ordinary, reasonable, and prudent persons under the same or similar circumstances was a, or the sole, proximate cause of her injuries.

6.    Any product conformed to the state of the art for the design and manufacture of similar products and systems at all times relevant to this litigation.

7.    Any product was not unreasonably dangerous, given the state of knowledge regarding such products.

8.   At all material times, Defendant **C & E Farms** acted with due care and complied with applicable statutory, regulatory, and common law requirements. Accordingly, some or all of the Plaintiff's claims are or may be barred by Defendant **C & E Farms'** compliance with all applicable state, federal and local laws and regulations.

9.   Further answering and by way of affirmative defense, Defendant **C & E Farms** states that it is entitled to a credit or set-off in the amount of any payments made or to be made by any joint tort-feasor, including but not limited to payments made by or on behalf of any co-defendant, or the amounts stated in any releases of any joint tort-feasor, whichever is greater.

10.   Further answering and by way of affirmative defense, Defendant **C & E Farms** states that it is entitled to a reduction or set-off in the amount of any payments made by defendant or its insurer or authorized representative to plaintiff for special damages.

### JURY DEMAND

Defendant **C & E Farms** hereby demands a jury trial.

**DANNA MCKITRICK, P.C.**

BY:   _/s/ John F. Cooney_____
     **John F. Cooney,** Admission *Pro Hac Vice*
     7701 Forsyth Blvd., Suite 800
     St. Louis, Missouri 63105-3907
     Phone:   (314) 726-1000
     Fax:       (314) 725-6592
     E-mail:   jcooney@dmfirm.com

     **ATTORNEYS FOR DEFENDANT
     C & E FARMS, INC.**

BY:  */s/ Michael B. Knight*
Michael B. Knight, #28374-49
NATIONWIDE MUTUAL INSURANCE
COMPANY TRIAL DIVISION
11555 N. Meridian Street
Carmel, IN 46032
Phone:        (317)810-7123
Fax:          (317)569-0924
Email:        knightm5@nationwide.com

**ATTORNEYS FOR DEFENDANT
C & E FARMS, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 7th day of February, 2014, that a true copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to:

**Patrick A. Elward**
**Meaghan Klem Haller**
Bingham Greenebaum Doll LLP
2700 Market Tower
10 West Market Street
Indianapolis, Indiana  46204

**ATTORNEYS FOR PLAINTIFF**

**S. Anthony Long**
**Samuel Adam Long**
Long & Mathies Law Firm
415 East Main Street
P.O. Box 250
Boonville, Indiana  47601

**CO-COUNSEL FOR PLAINTIFF**

**Ron Simon**
Ron Simon & Associates
800 Gessner Road, Suite 1240
Houston, Texas 77024

**CO-COUNSEL FOR PLAINTIFF**

**Patrick A. Shoulders**
**Steven K. Hahn**
Ziemer Stayman Weitzel & Shoulders
20 N. W. First Street
P.O. Box 916
Evansville, Indiana 47706

**ATTORNEYS FOR DEFENDANT**
**SCHNUCK MARKETS, INC.**

**Matthew H. Noce**
**Gerard T. Noce**
**Theodore J. MacDonald, Jr.**
Hepler Broom, LLC
211 North Broadway, Suite 2700
St. Louis, Missouri 63102

**ATTORNEYS, PRO HAC VICE, FOR**
**DEFENDANT SCHNUCK MARKETS, INC.**

**Brent R. Weil**
**James B. Goldbold**
Kightlinger & Gray LLP
7311 Eagle Crest Boulevard
Evansville, Indiana 47715-8157

**ATTORNEYS FOR DEFENDANT**
**VAUGHAN FOODS, INC.**

._____*/s/ John F. Cooney*_____